UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| LARNELL HENDRICK,<br>*Prisoner Identification No. 209-362*,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK B. BISHOP,<br>*individually and as Warden of North Branch Correctional Institution*,<br>LIEUTENANT SAWYERS,<br>*in his individual and official capacity*,<br>SERGEANT G. FORNEY,<br>*in his individual and official capacity*,<br>CO II SOLTAS,<br>*in his individual and official capacity*,<br>CO II ANDERSON,<br>*individually and in an official capacity*,<br>BILL BEEMAN,<br>*individually and as Medical Director of North Branch Correctional Institution*, and<br>DR. AVA JOUBERT,<br><br>    Defendants. | Civil Action No. TDC-14-2544 |

**MEMORANDUM ORDER**

On March 15, 2016, the Court issued an Order granting in part and denying in part the Motion for Summary Judgment filed by Defendants Frank B. Bishop, Warden of the North Branch Correctional Institution in Cumberland, Maryland ("NBCI"); Lieutenant Thomas Sawyers; Sergeant Gregory Forney; CO II Nicholas Soltas; and CO II Chris Anderson (collectively, the "State Defendants") and denying the Motion for Summary Judgment filed by Defendants Bill Beeman, the alleged medical director at NBCI; and Dr. Ava Joubert, a physician at NBCI (collectively, the "Medical Defendants"). On March 29, 2016, the State and Medical

Defendants filed separate Motions to Reconsider pursuant to Federal Rule of Civil Procedure 54(b). Also pending before the Court is Plaintiff Larnell Hendrick's Motion for Appointment of Counsel, filed on March 31, 2016, and Motion to Correct Statement of Error, filed on April 22, 2016. The motions are ready for disposition, and a hearing is unnecessary. *See* D. Md. Local R. 105.6. For the reasons that follow, Hendrick's Motion to Correct Statement of Error is GRANTED, the Medical Defendants' Motion to Reconsider is DENIED, the State Defendants' Motion to Reconsider is GRANTED IN PART and DENIED IN PART, and Hendrick's Motion for Appointment of Counsel is GRANTED.

## I. Motion to Correct Statement of Error

Hendrick has filed a "Motion to Correct Statement of Error," in which he seeks to amend various dates in his Opposition to Defendants' Motions to Reconsider. Because the Motion is unopposed and because Defendants have since had an opportunity to file their Reply to Hendrick's Opposition, the Motion to Correct Statement of Error is granted.

## II. Defendants' Motions to Reconsider

Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Reconsideration under Rule 54(b) is at the sound discretion of the district court. *See Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). Although the Rule 54(b) standard is not as exacting as the Rule 59 and 60 standard, *see Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991), revisiting earlier rulings is still "subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again,'" *Official Comm. of*

*the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)).

### A. The Medical Defendants' Motion to Reconsider

The Medical Defendants assert that the Court should reconsider the denial of their Motion for Summary Judgment because Beeman did not have the authority to change Hendrick's cell status, and the decision to move Hendrick to a double cell was made for medical reasons. With respect to Beeman, the Medical Defendants assert that he is not, in fact, the Medical Director at NBCI, but rather is the Assistant Regional Director of Nursing for the region including NBCI and does not have the authority to make cell recommendations. Although Hendrick has at times referred to both Beeman and Colin Ottey as the Medical Director, the Court's denial of summary judgment was not premised on Beeman's specific position or job responsibilities. Rather, it was based on Hendrick's allegations that Beeman had asked him if he would be willing to sign off on his pending grievance relating to an earlier alleged assault by correctional officers, and that shortly after he refused, Sgt. Forney stated that Beeman had given the "green light" to take away his single cell and put Hendrick "under attack." Hendrick Decl. ¶¶ 15–16, Pl.'s Opp'n State Defs.' Mot. Dismiss or in the Alternative Mot. Summ. J. Ex. 4, ECF No. 53-5. Beeman did not have to be the Medical Director to participate in a collective effort to retaliate against Hendrick. Although Hendrick's allegations may not prove to be true, he has put forth facts sufficient to establish a genuine dispute of material fact.

The Medical Defendants also assert that there was no retaliation because the medical visit that culminated in the decision to move Hendrick to a double cell was pre-planned. Although the Medical Defendants offer additional detail relating to Hendrick's course of treatment, their

argument is not fundamentally different from the one that the Court carefully reviewed and rejected in its March 15, 2016 Memorandum Opinion and Order. Although the Medical Defendants argue that the cell status change decision developed through a natural course of events, Hendrick has offered evidence that it occurred shortly after he was asked to and refused to abandon an excessive force claim in exchange for maintaining his single cell. Significantly, Hendrick had been approved in February 2014 for a single cell for a full year, only to have it taken away prematurely in the same time frame as this alleged exchange. Although further factual development through discovery may provide greater clarity, Hendrick has at this point established a genuine issue of material fact on retaliation. Therefore, the Medical Defendants' Motion to Reconsider is denied.

### B. The State Defendants' Motion to Reconsider

The State Defendants assert that the Court should reconsider its decision to deny their Motion for Summary Judgment because the Complaint fails to state a claim upon which relief can be granted, Hendrick has not established a genuine dispute of material fact, and Hendrick failed to exhaust administrative remedies.

The State Defendants assert that the Complaint fails to state a claim of excessive force against Warden Bishop, Lieutenant Sawyers, Sergeant Forney, CO Soltas and CO Anderson. The Court will grant the motion as to Warden Bishop, against whom there are no factual allegations relating to the excessive force claims. The Motion is denied as to remaining defendants. Contrary to the State Defendants' claim, Hendrick has provided a sworn declaration that Sergeant Forney told him that Lieutenant Sawyers and Beeman gave the "green light" to put him "under attack." Hendrick Decl. ¶¶ 15–16. The State Defendants now reference the statement of inmate Tremaine Kitchen, who told the Internal Investigative Unit ("IIU")

investigator that Officers Soltas and Anderson physically picked Hendrick up and forced him into a cell without assaulting him, and they assert that Leonard Haley's declaration, which the Court referred to in its Memorandum Opinion, *see Hendrick v. Bishop*, 2016 WL 1060212, at *4, lacks credibility. These assertions do not alter the Court's conclusion that there is a genuine issue of material fact, based on the accounts of Hendrick and Haley, that CO Soltas and CO Anderson applied excessive force against Hendrick at the direction of Lieutenant Sawyer and Sergeant Forney.

As for the claim that Hendrick failed to exhaust administrative remedies before filing his Complaint, the Prison Litigation Reform Act states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2012). Although the United States Court of Appeals for the Fourth Circuit has not decided the issue, the weight of circuit authority indicates that the administrative process must be fully completed before the complaint is filed. *See Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001) (holding that inmates must exhaust before filing suit); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (same); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534–35 (7th Cir. 1999) (same); *see also Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624 (D. Md. 2015) ("Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies."); *but see Williams v. Norris*, 176 F.3d 1089, 1090 (8th Cir. 1999) (holding that inmates must exhaust before the district court issues a ruling). There is no dispute that the Hendrick filed his Complaint in this case without having filed an Administrative Remedy Procedure request ("ARP") relating to the alleged excessive force.

There remains the question, however, whether administrative remedies were "available" to Hendrick. *See* 42 U.S.C. § 1997e(a). Since the Court's Memorandum Opinion was issued, the Supreme Court overturned *Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015), an opinion the Court previously cited in its exhaustion analysis, *see Hendrick*, 2016 WL 1060212, at *3–4. The Supreme Court held that while there is no "special circumstances" exception to the PLRA exhaustion requirement, it nevertheless may be satisfied if administrative remedies are unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). For example, a remedy may be unavailable if "it operates simply as a dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," if the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," or if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Here, Hendrick stated in his declaration that on July 25, 2014, before he filed his Complaint in the present case, he told Lieutenant Janet Puffenberger and CO II Steven J. Miller, Jr. that he wanted to file an ARP regarding the excessive force claim. He claims, however, that Lieutenant Puffenberger refused his request and told him that an ARP could not be filed because the IIU would be conducting an investigation. The next week, he was told a second time by these officials that his ARP would not be processed. He asserts that he submitted an ARP anyway, but he never received any response. That ARP, however, related to Hendrick's transfer to a double cell, not an allegation of excessive force. According to Hendrick, in mid-August 2014, he again stated that he wanted to file an ARP relating to excessive force and was told by Lieutenant Jason Harbaugh that it could not be filed. He filed his Complaint in this case on August 8, 2014.

In seeking reconsideration, the State Defendants have submitted declarations from Lieutenant Harbaugh, Lieutenant Puffenberger, and CO II Miller that contradict Hendrick's account. They also assert that Hendrick is knowledgeable about the ARP process, and that new Division of Correction Directives ("DCD") and inmate handbooks indicate that inmates should file ARPs in all circumstances, even when an IIU investigation has been opened. These materials do not provide a basis to reconsider the decision. The submitted declarations simply create a genuine issue of fact regarding what Hendrick was told when he sought to file an ARP. On a motion for summary judgment, the facts must be taken in the light most favorable to Hendrick. Although Hendrick had previously filed an ARP, on July 9, 2013, relating to an earlier incident of alleged excessive force, that ARP was dismissed procedurally because the matter was the subject of an IIU investigation, an outcome that supports rather than refutes the position that the ARP process was not truly "available" on an excessive force matter. As for the cited DCD provision, it states that the Warden is to issue a final dismissal of an ARP if it relates to the same incident addressed in an IIU investigation. Division of Correction Directive No. 185-003 § N.4, Defs.' Mot. Reconsider Ex. 5, ECF No. 81-6. Even if such a dismissal is appealable, the fact that wardens are explicitly instructed to dismiss ARPs in this manner may indicate that as a practical matter, the ARP process is just not available when an IIU investigation is at issue. *See Ross*, 136 S. Ct. at 1860 (considering whether the practice of wardens routinely dismissing ARP grievances as procedurally improper when an IIU investigation is pending may render the ARP remedy "unavailable").

Considering the present record, the Court concludes that further factual development is needed prior to resolution of the administrative exhaustion issue. *See Ross*, 136 S. Ct. at 1862 (remanding for assessment of whether the ARP process was an "available" remedy because the

materials provided "may not represent the complete universe of relevant documents"). Whether Hendrick can establish that administrative remedies were "unavailable" under *Ross* is best resolved after discovery, to ensure not only that all relevant documents are collected and considered, but also that the record is clear on what Hendrick knew or should have known about the ARP process when an IIU investigation is involved, what information NBCI officials provided to him, and how they responded, both officially and unofficially, to his inquiries and requests. The Court will therefore deny the Motion and will reaffirm the denial of summary judgment at this time.

### III. The Motion for Appointment of Counsel

In its Memorandum Opinion of March 15, 2016, the Court invited Hendrick to file a Motion for Appointment Counsel to represent him on the remaining claims. Hendrick's unopposed Motion is now granted. "The court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2012). "The power to appoint is a discretionary one, but it is an abuse of discretion to decline to appoint counsel where the case of an indigent plaintiff presents exceptional circumstances." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Whether such circumstances exist depends on the type and complexity of the case as well as the abilities of the individuals bringing it. *Id.* As Hendrick notes, his incarceration substantially limits his ability to conduct discovery and limits to locate material witnesses. Hendrick has also sought to obtain counsel on his own, to no avail. At this stage of the case, the prospect of conducting discovery, addressing ongoing issues such as exhaustion of administrative remedies, and proceeding to trial if necessary warrants appointment of counsel. The Motion is therefore granted. The Court notes that Hendrick has had counsel appointed in a

related case. *See* Order Appointing Counsel, *Hendrick v. Gordon*, No. DKC-14-2398 (D. Md. Feb. 5, 2016).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Medical Defendants' Motion to Reconsider, ECF No. 80, is DENIED. The State Defendants' Motion to Reconsider, ECF No. 81, is GRANTED as to Warden Bishop and DENIED as to the remaining State Defendants. All claims against Warden Bishop are now DISMISSED.

Hendrick's Motion for Appointment of Counsel, ECF No. 82, is GRANTED, and Hendrick's Motion to Correct Statement of Error, ECF No. 87, is GRANTED. A separate Order shall issue.

Date: August 19, 2016

THEODORE D. CHUANG
United States District Judge